Filed 4/30/14  Helping Hand Tools v. San Diego Air Pollution Cont. Dist. etc. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| HELPING HAND TOOLS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SAN DIEGO AIR POLLUTION CONTROL DISTRICT HEARING BOARD,<br><br>    Defendant and Respondent;<br><br>TODD T. CARDIFF,<br><br>    Objector and Appellant. | D063313<br><br><br>(Super. Ct. No. 37-2012-00094152-CU-TT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed.

Law Office of Todd T. Cardiff and Todd T. Cardiff for Plaintiff and Appellant and for Objector and Appellant.

Thomas E. Montgomery, County Counsel, and C. Ellen Pilsecker, Chief Deputy County Counsel, for Defendant and Respondent San Diego Air Pollution Control District Hearing Board.

Helping Hand Tools (HHT) and its trial counsel, Todd Cardiff (together, Appellants), appeal a judgment ordering them to pay $6,000 in sanctions under the California Environmental Quality Act (CEQA), which authorizes the imposition of sanctions against a party and its counsel for asserting a frivolous CEQA claim.  (Pub. Resources Code, § 21169.11.)  As a result of settlements that occurred while this appeal was pending, Appellants have substantially recast their issues presented.  They now ask us to determine only whether (1) the trial court correctly identified the decisionmaking body to which HHT should have appealed a district's determination that a project was exempt from CEQA, and (2) "[w]hether sanctions were properly awarded against Appellants . . . when they based their action on published case law."  We conclude the trial court did not abuse its discretion in determining these issues, and will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Statutory Context*

This appeal arises in the context of regulatory approvals issued by a local air pollution control district.  We therefore begin by providing a brief overview of the complex statutory framework governing those entities.

The Legislature has enacted "an intensive, coordinated state, regional, and local effort to protect and enhance the ambient air quality of the state."  (Health & Saf. Code, § 39001; further undesignated statutory references are to the Health & Safety Code.).  "Local and regional authorities have the primary responsibility for control of air pollution from all sources other than vehicular sources."  (§§ 39002, 39025, 39037, 40000.)

2

The San Diego County Air Pollution Control District (District) is the local authority for San Diego County. The San Diego County Board of Supervisors (Board of Supervisors) is ex officio the District's elected governing board. (§§ 40100, 40100.5, subd. (e).) In that capacity, the Board of Supervisors sits as the Air Pollution Control Board (APCB). The APCB (i) establishes the permit system (§ 42300); (ii) adopts District rules and regulations and the District's annual permit fees (§§ 40725, 42311); (iii) appoints the Air Pollution Control Officer (§ 40750), who appoints District personnel subject to the direction of the APCB (§ 40751) and is authorized to issue Authorizations to Construct (ATCs), which are prerequisites to constructing or modifying stationary sources of air contaminants (§ 40752); and (iv) has the authority to issue orders of abatement against those in violation of permit conditions (§ 42450).

The APCB also appoints the members of the San Diego County Air Pollution Control District Hearing Board (Hearing Board), which is an independent body that hears appeals of the District's permit decisions. (§§ 40800 et seq.) The Hearing Board has five members, none of whom may be District officers or employees. (§§ 40800, 40801, 40803.)

*The Project's History*

This lawsuit arose from efforts that began in 2007 to upgrade the turbine in a power plant in Escondido, California that was originally approved in 2001. Real parties in interest Escondido Energy Center, LLC and Wellhead Electric Co., Inc. (together, Wellhead), through a predecessor in interest, applied to the District for an ATC to allow the turbine upgrade. The District issued an ATC authorizing the upgrade in July 2008,

3

but because the turbine replacement did not immediately occur as anticipated, the District extended the ATC several times through 2011 and approved the transfer of the ATC from the predecessor in interest to Wellhead.

In 2011, Wellhead applied to the District to change certain conditions in the ATC, including to allow Wellhead to retain the existing "selective catalytic reduction" (SCR) system. On December 20, 2011, the District approved the requested modification, but neglected to address the request regarding the SCR system. Wellhead requested that the District correct the oversight regarding the SCR system, as well as make other technical adjustments to the ATC. The District did so on January 19, 2012. The District also found the revisions to be exempt from CEQA. Accordingly, the following month, the District filed with the county clerk notices of exemption (NOEs) for the December 20, 2011 and January 19, 2012 ATC modification approvals.

<em>HHT's Challenges to the Project</em>

In the meantime, HHT's executive director, Rob Simpson, asked the District to place him on its public interest list and to provide a copy of any existing or proposed permits for the Escondido power plant. On January 19, 2012, the District provided Simpson a copy of the December 20, 2011 and January 19, 2012 ATCs.

On February 16, 2012, HHT's attorney, Cardiff, wrote to the District to complain of a lack of public notice regarding the ATC revisions and to "demand[] the right to appeal the ATC . . . to the Hearing Board." Cardiff's letter continued, "In addition, an appeal to elected officials must be available to challenge" the District's NOEs. Later in the letter, Cardiff asserted "environmental determinations under CEQA must be available

4

for appeal to elected officials. (Pub. Res. Code § 21151(c).) Thus, the permit and Notice of Exemption . . . must be able to be appealed. Therefore, [the District] should permit my Client to appeal the ATC to the Air District Hearing Board (aka County Board of Supervisors)."

The District's counsel responded by e-mail the following day, disagreeing with Cardiff's challenges to the project, but explaining HHT's appellate rights as follows: "If[,] however, your client desires to appeal these actions, the procedures for doing so are set forth in District Rule 25 . . . . Additionally, please note that the elected decision-making body for the Air Pollution Control District is the San Diego County Board of Supervisors, sitting as the Air Pollution Control Board."

On February 21, 2012, HHT filed a "petition for hearing board action" challenging the January ATC and February NOEs. On March 12, HHT amended its petition to the Hearing Board to clarify that HHT also challenged the December 20, 2011 ATC.

On March 15, 2012, the District filed an answer and memorandum of points and authorities in opposition to HHT's petition to the Hearing Board. In it, the District argued the merits of HHT's petition, but also argued the Hearing Board lacked jurisdiction to hear appeals of CEQA determinations.

The following day, HHT filed a complaint and petition for writ of mandamus in superior court seeking to set aside the ATC and NOEs. The complaint named the District, its director, the Hearing Board (which the complaint alleged was "*made up of* the members of the [County Board of Supervisors]"), and Wellhead. (Italics added.) In its cause of action for declaratory relief, HHT alleged a controversy existed because HHT

5

contended "CEQA determinations such as exemptions must be available to be appealed to an elected body for a final decision pursuant to Public Resources Code section 21151(c)," whereas the District contended the "Hearing Board does not have jurisdiction to hear the appeal of the Notices of Exemption."

The Hearing Board heard HHT's appeal on March 22, 2012—the last possible day it could have timely heard the matter. (§ 42302.1 [hearing boards must hear appeal and render decision within 30 days of request for hearing].) The Hearing Board heard argument and testimony regarding whether it had jurisdiction to hear the CEQA appeal. Ultimately, however, the Hearing Board never took action because quorum was lost after two members left to attend other engagements and the chairman disqualified himself after he concluded he could not resolve the matter in an unbiased manner because of HHT's pending lawsuit against the Hearing Board.

*Trial Court Proceedings*

On April 25, 2012, Wellhead answered HHT's superior court complaint by, among other things, admitting HHT's allegation that "the Notices of Exemption were appealable to the San Diego County Board of Supervisors, the elected decisionmaking body of the APCD, pursuant to Public Resources Code section 21151(c)."

Two days later, HHT filed an amended complaint and writ petition. Among other things, the amended pleading alleged HHT had exhausted its administrative remedies by pursuing the appeal to the Hearing Board, and clarified that the Hearing Board "is made up of the members *appointed by*" the Board of Supervisors. (Italics added.)

6

In their answers to the amended complaint, the District, its director, and Wellhead asserted HHT had failed to exhaust its administrative remedies with respect to the NOEs because they "could have been appealed by HHT to the San Diego County Board of Supervisors, the elected Governing Board of the [District], pursuant to Public Resources Code section 21151(c), but that HHT failed to do so."

The parties briefed the merits of HHT's claims to the trial court. The Hearing Board also moved for an award of sanctions against HHT under Public Resources Code section 21169.11, which authorizes the trial court to impose sanctions against a party and its counsel for asserting a frivolous CEQA claim. The focus of the Hearing Board's motion was that HHT's claims against it were frivolous because the Hearing Board took no action regarding the ATC or the NOEs due to the loss of quorum.

The District, its director, and Wellhead also filed a motion jointly seeking sanctions against HHT for bringing a frivolous CEQA claim. Their motion argued HHT's CEQA claim was frivolous because HHT failed to exhaust its administrative remedies by appealing the NOEs to the District's elected governing body, the Board of Supervisors.

HHT opposed both sanctions motions primarily on the ground that it was not required to appeal the NOEs to the Board of Supervisors because that board was not a decisionmaking body under CEQA because it did not have jurisdiction to approve, deny, or modify the permit.

The trial court heard the merits of the case and the two sanction motions on October 4, 2012. In a subsequent minute order, the court ruled against HHT on the merits of its claims regarding the ATC, and concluded HHT failed to exhaust its administrative remedies for its CEQA claims by failing to appeal the NOEs to the Board of Supervisors. Based on its conclusion that the Hearing Board "had nothing to do with the CEQA notice of exemption," the court granted the Hearing Board's motion for sanctions and ordered HHT and Cardiff to pay the Hearing Board $6,000. The court denied the other parties' motion for sanctions. The court entered judgment on November 28, 2012.

HHT appealed the judgment on the merits, and HHT and Cardiff appealed as to the award of sanctions. On appeal, the parties resolved their dispute on the merits, leaving unresolved only HHT and Cardiff's appeal on the sanctions award.

DISCUSSION

As a result of the parties' settlement, Appellants now ask us to review the propriety of the sanctions award by determining (1) "[w]hether the Hearing Board is the proper body to consider CEQA on administrative appeal," and (2) "[w]hether sanctions were properly awarded against Appellants . . . when they based their action on published case law."

A. *Guiding Legal Principles Regarding Sanction Awards*

Public Resources Code section 21169.11 provides that "[i]f the court determines that a [CEQA] claim is frivolous, the court may impose an appropriate sanction, in an amount up to ten thousand dollars ($10,000), upon the attorneys, law firms, or parties

8

responsible for the violation."  (Pub. Resources Code, § 21169.11, subd. (b).)  The statute defines " 'frivolous' " as "totally and completely without merit."  (*Id*., subd. (c).)  Although we have not found any cases further construing the phrases " 'frivolous' " or "totally and completely without merit" in the specific context of section 21169.11, courts interpreting the same phrases in other statutory contexts have applied an objective standard, asking if any reasonable attorney would agree that the position is totally devoid of merit.  (E.g., *Levy v. Blum* (2001) 92 Cal.App.4th 625, 634-635 [Code Civ. Proc., § 128.5]); *Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 683 [anti-SLAPP provision of Code Civ. Proc., § 425.16, subd. (c)(1)]; *People v. Smith* (2013) 216 Cal.App.4th 947, 951 [Sexually Violent Predator Act, Welf & Inst. Code, § 6608, subd. (a)].)  Generally speaking, a contention is not frivolous if it is "arguable," even though it "lacks persuasive force."  (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 168 (*Guillemin*).)

We ordinarily review an award of sanctions under the deferential abuse of discretion standard.  (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921.) "Assuming some evidence exists in support of the factual findings, the trial court's exercise of discretion will not be disturbed unless it exceeds the bounds of reason." (*West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 698.)  "But where a question of statutory construction is presented in the course of the review of a discretionary decision, such issues are legal matters subject to de novo review."  (*Optimal Markets, Inc. v. Salant*, at p. 921.)

9

B.      *The Hearing Board Is Not the Proper Body to Consider CEQA on Administrative Appeal*

Appellants contend the trial court abused its discretion in awarding sanctions because it misinterpreted Public Resources Code section 21151, subdivision (c), which provides that "[i]f a nonelected decisionmaking body of a local lead agency . . . determines that a project is not subject to [CEQA], that . . . determination may be appealed to the agency's elected decisionmaking body, if any."  The guidelines implementing CEQA define a "[d]ecision-making body" as "any person or group of people within a public agency permitted by law to approve or disapprove the project at issue."  (Cal. Code Regs., tit. 14, § 15356.)

Appellants argue the Board of Supervisors—admittedly an *elected* governing body of the District—nevertheless is not a *decisionmaking* body because it does not have the authority to approve or disapprove a project.  In doing so, Appellants rely heavily on *No Wetlands Landfill Expansion v. County of Marin* (2012) 204 Cal.App.4th 573 (*No Wetlands*).  The trial court found *No Wetlands* distinguishable.  We do too.

In *No Wetlands*, the Marin County Environmental Health Services (Marin EHS) issued a permit for expansion of a landfill after certifying as complete an environmental impact report (EIR) prepared under CEQA.  (*No Wetlands*, *supra*, 204 Cal.App.4th at p. 577.)  An association of local residents claimed a right to appeal Marin EHS's certification of the EIR to the Marin County Board of Supervisors under Public Resources Code section 21151, subdivision (c).  (*Id*. at p. 579.)  The county refused to hear the appeal on the basis that Marin EHS was acting as the designated representative

10

of the California Department of Resources Recycling and Recovery (CalRecycle) and not on behalf of the county. (*Id*. at p. 579.) The residents sued and obtained a writ of mandate ordering the defendants to vacate the EIR certification and to allow an administrative appeal to the board of supervisors. (*Id*. at p. 580.) The defendants appealed to the First District Court of Appeal, Division Four, which reversed.

Our colleagues explained that under the statutory scheme at issue before them—the Integrated Waste Management Act (Waste Act) (Pub. Resources Code, §§ 40000 et seq.)—the "Board of Supervisors has no power to approve or disapprove the project at issue and thus is not an elected decisionmaking body empowered to hear plaintiffs' appeal." (*No Wetlands*, *supra*, 204 Cal.App.4th at p. 584.) But there are material differences between the Marin County Board of Supervisors' role under the Waste Act and the San Diego County Board of Supervisors' role under the laws governing air pollution control districts. Although a "county's board of supervisors may designate a local enforcement agency under the Waste Act to inspect, issue permits, and enforce regulations at solid waste landfills," (*id*. at p. 581; Pub. Resources Code §§ 43200, 43203, subd. (a)), the "local enforcement agency is not, however, authorized to issue a[] . . . permit under its own power." (*No Wetlands*, *supra*, 204 Cal.App.4th at p. 581; Pub. Resources Code §§ 44007, 44009, subd. (a)(1).) Instead, the local enforcement agency must submit the proposed permit to CalRecycle for the state agency's consideration, and the local agency may issue a permit only with CalRecycle's concurrence. By contrast, the District, through its Air Pollution Control Officer—an APCB (aka Board of Supervisors)

11

appointee—independently issues ATCs and permits to operate without review or approval by a supervising state agency.  (Health & Saf. Code, §§ 40750, 40752.)

The appellate process for permit decisions under the Waste Act also differs dramatically.  Although the Waste Act and air pollution control district laws both authorize local governing bodies to appoint members of a hearing board to hear appeals of permit decisions, local hearing board decisions under the Waste Act are subject to further appeal to CalRecycle.  (Pub. Resources Code, § 45040, subd. (a).)  There is no similar appellate oversight for air pollution control district hearing boards.

Given the material distinctions between the powers vested in local agencies under the Waste Act and air pollution control district laws, we are not surprised the *No Wetlands* court concluded a county board of supervisors is not a decisionmaking body under the Waste Act.  *International Longshoremen's and Warehousemen's Union, Local 35 v. Board of Supervisors* (1981) 116 Cal.App.3d 265 (*International Longshoremen's*) provides a good example of why that conclusion does not extend to air pollution control districts.

In *International Longshoremen's*, the San Bernardino County Board of Supervisors, acting as the governing board of the county's air pollution control district, authorized the reconstruction and expansion of an alkaline mining plant for which an EIR had been prepared and certified.  (*International Longshoremen's*, *supra*, 116 Cal.App.3d at p. 268.)  The board required the plant to comply with a district rule regarding certain emissions, but further provided that if the plant could not meet those requirements using best available techniques, the district would amend its rule to allow whatever emissions

12

level the plant could achieve using the best available technology. (*Id*. at pp. 268-269.) The board of supervisors (acting in that capacity) later certified a supplemental EIR that addressed certain modifications to the plant expansion. (*Id*. at p. 269.) Later, the board, as the governing body of the air pollution control district, held a hearing at which they approved a rule change that was drafted in such a way as to allow increased emissions only from the alkaline plant. (*Ibid*.) In adopting the rule change, the board determined the action was categorically exempt from CEQA. (*Ibid*.) The union representing a majority of the plant workers and an environmental protection group sued to challenge the categorical exemption. (*Id*. at p. 270.) The trial court found the lawsuit untimely under CEQA, but the Court of Appeal, Fourth District, Division Two reversed.

After finding the lawsuit timely, the court examined the merits of the CEQA claim. (*International Longshoremen's*, *supra*, 116 Cal.App.3d at pp. 270-276.) The court concluded the board of supervisors, acting as the governing board of the district, failed to properly consider the required factors under CEQA. (*Id*. at pp. 275-276.) Accordingly, the court reversed with directions to issue a writ of mandate commanding the board to set aside its rule change and to conduct further proceedings in conformity with the requirements of CEQA. (*Id*. at p. 277.)

Appellants attempt to distinguish *International Longshoremen's* on the basis that the board of supervisors engaged in rulemaking as opposed to administrative project approval. We are not persuaded. Rather, the case persuasively demonstrates how sweeping an elected air pollution control board's authority is, effectively allowing spot-legislative approvals of projects. Moreover, although the *International Longshoremen's*

13

court reversed the specific rule amendment, it did not do so on the basis that the board was without the power to change it, but rather, on the basis that the board needed to apply CEQA more thoroughly.

Based on our reading of CEQA, *No Wetlands*, and *International Longshoremen's*, we conclude the Board of Supervisors, sitting as the APCB, is the District's elected decisionmaking body within the meaning of Public Resources Code section 21151, subdivision (c). Accordingly, the trial court did not abuse its discretion in concluding HHT was required to appeal the NOEs to the Board of Supervisors instead of the Hearing Board.

Appellants also contend they were excused from appealing to the Board of Supervisors because the District lacked a specific rule or procedure specifying how such an appeal is to be taken. On this record, we are not convinced. First, Appellants assert—without any supporting authority—that "Public Resources Code section 21151 does not provide an independent basis for appealing a CEQA determination to the Board of Supervisors." As we just explained, however, we conclude it does. Moreover, as a result of Appellants' admitted failure to attempt an appeal to the Board of Supervisors, the record is silent as to whether the Board of Supervisors' rules and procedures specifically address appeals of CEQA determinations made by the District. This point was not lost on the trial court:

> "Mr. Cardiff: There's nothing in the record that shows that the Board of Supervisors has ever considered a [*sic*] appeal of a CEQA decision for an ATC."

14

"The Court: Mr. Cardiff, that's why I asked you the question whether you tried to do that. Because if you did, if you had made inquiry to the Board of Supervisors, to the clerk, to somebody, and you were told [']no, you can't do this,['] then I think that becomes more of a concern. But you didn't do that."

The record's silence in this regard is fatal to Appellants' challenge. (E.g., *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1 ["It is the burden of appellant to provide an accurate record on appeal to demonstrate error. Failure to do so precludes an adequate review and results in affirmance of the trial court's determination."].)

Moreover, the inverse of Appellants' assertion was true—there was something in the record that showed the Hearing Board had never considered a CEQA appeal: one member of the Hearing Board stated at the hearing that in his 20 years on the board he could not remember ever hearing a CEQA matter.

C. *Appellants' Purported Reliance on* No Wetlands *Does Not Render the Sanctions Award Improper*

Appellants assert throughout their briefing that their reliance on *No Wetlands* rendered their CEQA claim against the Hearing Board arguable and, thus, immune from sanctions. (See, e.g., *Guillemin*, *supra*, 104 Cal.App.4th at p. 168 [a contention is not frivolous if it is "arguable," even though it "lacks persuasive force"].) We are not persuaded. To begin with, Appellants could not possibly have relied on *No Wetlands* at the time they filed their petition with the Hearing Board—*No Wetlands* had not been decided by then. Nor could appellants have relied on *No Wetlands* when they filed the initial complaint in superior court—*No Wetlands* still had not been decided (a point Appellants curiously concede in their opening brief).

15

All the while, Appellants conducted themselves as if they were entitled to appeal the NOEs to the District's elected decisionmaking body. They did so in their initial demand letter, which expressly identified the Board of Supervisors as the elected decisionmaking body for the District. In response, the District's counsel immediately notified Appellants the elected decisionmaking body for the District is the Board of Supervisors sitting as the APCB. The District reiterated the Hearing Board's lack of jurisdiction in its response to HHT's Hearing Board petition. HHT's executive director testified before the Hearing Board that HHT's response to being notified that the Hearing Board lacked jurisdiction over CEQA appeals was to file a lawsuit, not an appeal to the Board of Supervisors. HHT's original complaint similarly invoked its right to appeal "CEQA determinations such as exemptions . . . to an elected body for a final decision pursuant to Public Resources Code section 21151(c) . . . ." The trial court identified Appellants' persistent pursuit of their appeal to the wrong board as part of the basis for sanctions. Under the circumstances, we cannot conclude the trial court abused its discretion in doing so.

Additionally, although we decline to invoke formally the doctrine of judicial estoppel (as respondents have requested), Appellants' inconsistent positions further establish the trial court did not abuse its discretion in concluding Appellants did not act reasonably under the circumstances.

Finally, because we have concluded the trial court did not abuse its discretion in awarding sanctions on the basis that it did, we have not considered the alternative bases proffered on appeal by the Hearing Board.

16

DISPOSITION

The judgment is affirmed.  The Hearing Board is entitled to costs on appeal.

McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

17